UTAH DEPARTMENT OF TRANSPOR-
TATION, Plaintiff and Appellant,

v.

WALTER M. OGDEN AND SONS, INC.,
and Sevier County Treasurer, Defen-
dants and Appellees.

UTAH DEPARTMENT OF TRANSPOR-
TATION, Plaintiff and Appellant,

v.

Rulon LIND and Flora S. Lind, His Wife,
Trustor; Corporation of the Presiding
Bishop of the Church of Jesus Christ of
Latter–Day Saints, Beneficiary; and
Sevier County Treasurer, Defendants
and Appellees.

UTAH DEPARTMENT OF TRANSPOR-
TATION, Plaintiff and Appellant,

v.

LAYGO COMPANY, a Partnership,
Christie Richards, Janice Parker, Le-
ane Jarrette, and Jean Young, Defen-
dants and Appellees.

UTAH DEPARTMENT OF TRANSPOR-
TATION, Plaintiff and Appellant,

v.

J.D. SPRINGER, Defendant
and Appellee.

No. 890173.

Supreme Court of Utah.

Nov. 20, 1990.

Rehearing Denied Jan. 23, 1991.

R. Paul Van Dam, Donald S. Coleman, Stephen C. Ward, Alan S. Bachman, Salt Lake City, for Utah Dept. of Transp.

Kay L. McIff, Ken Chamberlain, Tex R. Olsen, Richfield, for Walter M. Ogden and Sons, Inc., Rulon Lind and Flora S. Lind, Laygo Co. and J.D. Springer.

DURHAM, Justice:

The Utah Department of Transportation (UDOT) brings this interlocutory appeal from an order of the trial court in condemnation proceedings where appellees' properties were condemned for highway construction. The trial court changed the statutory date of valuation of the property and the

date from which interest should accrue on that value. We reverse.

Appellees each owned property on the west side of Richfield that UDOT needed to construct Interstate Highway 70. UDOT followed the proper procedures in condemning the properties by serving each appellee with a summons, tendering into court approved appraisals for each piece of property, and securing uncontested orders of occupancy. All of these actions occurred between August 1986 and October 1987. The landowners were served with process on August 19, 1986, and October 7, 12, and 15, 1987.[1] Each of the landowners withdrew the tendered amount of money without raising any objections to the taking, or reserving any issues related to the taking, including the date of valuation.

Under Utah law, the date of valuation is presumed to be the date of service of summons. Utah Code Ann. § 78–34–11. Interest is computed on a compensation award "from the date of taking actual possession ... or the order of occupancy, whichever is earlier." Utah Code Ann. § 78–34–9. After withdrawing the appraisal funds, each landowner filed a motion to have the trial court fix dates different from those specified under the statute for the date of valuation and the date from which interest should accrue. Appellees claimed that valuation at the time the summonses were served did not lead to "just compensation" under article I, section 22 of the Utah Constitution. Although the cases have not been consolidated for trial, they were consolidated for a hearing on appellees' motions. After a hearing on the motions, the trial judge ordered that each of the dates of valuation for the properties should be changed from the various 1986–87 dates (the dates summonses were served) to June 22, 1977.[2] UDOT appeals from this order.

■ UDOT argues that appellees waived their right to challenge the valuation dates. As noted above, UDOT tendered to the court the full amounts of its approved appraisals pursuant to Utah Code Ann. § 78–34–9 as a condition precedent to occupying the properties. These amounts were withdrawn by each appellee. UDOT claims that by withdrawing these funds, appellees abandoned their right to challenge the valuation dates. We agree. Section 78–34–9 provides in part:

Upon the application of the parties in interest, the court shall order the money deposited in the court be paid forthwith for or on account of the just compensation to be awarded in the proceeding. A payment to a defendant as aforesaid shall be held to be an abandonment by such defendant of all defenses excepting his claim for greater compensation.

The statute expresses the long-recognized common law concept that a landowner who accepts compensation awarded for lands taken for public use waives all other remedies, except a claim for greater compensation or damages. *United States v. Lynah*, 188 U.S. 445, 462, 23 S.Ct. 349, 853, 47 L.Ed. 539 (1903); *Winslow v. Baltimore & Ohio R.R.*, 208 U.S. 59, 63, 28 S.Ct. 190, 191, 52 L.Ed. 388 (1908); *Conaway v. Yolo Water & Power Co.*, 204 Cal. 125, 266 P. 944, 946–47 (1928); 27 Am.Jur.2d *Eminent Domain* § 494 (1966).

This court specifically recognized this concept and its embodiment in section 78–34–9 in *Redevelopment Agency of Salt Lake City v. Tanner*, 740 P.2d 1296 (Utah 1987): "[The] language [of section 78–34–9] correctly states the established and applicable rule that once a property owner chooses to withdraw the money deposited by the State in obtaining the order [of immediate occupancy], he waives *all objections and defenses to the action*, ... except any claim to greater compensation." *Id.* at 1300 (emphasis added); *see also Utah State Rd. Comm'n v. Friberg*, 687 P.2d 821, 833 n. 10 (Utah 1984). We hold that appellees waived their right to challenge

---

1. These dates are presumed to be the dates of valuation. As discussed in more detail below, Utah Code Ann. § 78–34–11 provides that the date of service of process "shall be deemed" to be the date of valuation.

2. The majority of the parties' briefs discuss which of these dates was the proper one for valuation. Because we decide this case on a procedural point, we do not address these arguments.

the dates of valuation when they withdrew the funds deposited by UDOT without taking some affirmative action to preserve their challenge.

In *Friberg*, this court, in a plurality opinion, held that section 78-34-11 of the Utah Code "creates a rebuttable presumption that the date for determining valuation shall be the date of service of process." 687 P.2d at 831. The court established a high standard for rebutting the presumption and explained the policy reasons for doing so:

> Neither the constitutional right of the landowner or the right of the State to fairness would find root in firmer ground if the statutory language were construed so loosely as to permit the service of summons to be regularly challenged on the basis of appraisals that, at most, might result in minor differences in the valuation. On the contrary, the constitutional right and the interests it protects, both directly and indirectly, are accorded greater protection by a *substantial degree of certainty*, which will *reduce the cost of litigation* and *promote the expeditious disposition of condemnation suits*, thereby allowing the condemnee to adjust with as little disruption as possible to the impact of the condemnation.

*Id.* at 831-32 (emphasis added).

■ Those same policy considerations support our holding in this case. The legislature has mandated procedures for exercising the powers of eminent domain. These procedures are meant to provide the "substantial degree of certainty" discussed in *Friberg*. Among these are the steps outlined in section 78-34-9, i.e., serving summons, depositing funds, and securing an order of immediate occupancy. Once the condemnor has followed these steps and the property owner has withdrawn the funds tendered to the court, the condemnor may assume that the property owner has assented to the fundamental legitimacy of the taking. The property owner may still dispute the amount of compensation after withdrawing the appraisal funds, but he is estopped from disputing any other aspect of the taking. One such aspect is the date

as of which the property must be valued for compensation purposes.

Appellees have argued that the date of valuation is exclusively related to the question of compensation and may therefore be disputed after withdrawal of the appraisal funds. We do not agree. Although the date of valuation *affects* the amount of compensation, it is more closely related conceptually to the defenses mentioned in section 78-34-9. Therefore, after the property owner has withdrawn the funds, the condemnor is entitled to a degree of certainty regarding the taking, including the date upon which compensation must be assessed. This is the policy behind section 78-34-11, which deems the date of valuation to be the date of service of summons. We adhered to that policy of providing certainty in eminent domain proceedings when we construed section 78-34-11 in *Friberg*. In *Friberg*, the property owners withdrew the deposited funds pursuant to a stipulation which explicitly reserved for trial the issue of the date of valuation. Our holding in this case—that a property owner's objection to the presumption that the date of service of summons is the proper date of valuation must be raised before withdrawal of appraisal funds—further promotes certainty and efficiency in eminent domain proceedings.

■ This does not mean that a property owner, if faced with a situation where the date of service of process would be an unfair valuation date, is unable to dispute the date. In fact, there are a number of possible ways to object to the presumption that the date of service of process is the proper date of valuation. A property owner could choose not to withdraw the funds tendered by the condemnor. This would clearly preserve an objection to the date of valuation. A property owner might accept the appraisal funds under stipulation that he or she is preserving an objection to the date of valuation, as was done by the appellants in *Friberg*. 687 P.2d at 827. Absent a stipulation, a property owner could seek approval from the court for withdrawal of the appraisal funds after giving notice of the objection to the date. That approval

should be granted by the trial court upon a prima facie showing that applying the presumption of valuation as of the date of service of summons may be unconstitutional. *See Friberg,* 687 P.2d at 830–31. Since the property owners in this instance withdrew the funds without reserving any objection by stipulation or otherwise, they waived the right to challenge the date of valuation.

The trial court ruled that interest should be computed from the June 1977 date rather than the date the immediate order of occupancy was granted. Utah Code Ann. § 78–34–9. The basis for this ruling was the court's resolution of the valuation date claim, which claim we now hold waived by the appellees. We therefore also reverse this part of the trial court's order.

Because we reverse the trial court's order on procedural grounds, we do not address the other arguments raised.

HALL, C.J., HOWE, A.C.J., and STEWART and ZIMMERMAN, JJ., concur.